1  GREGORY S. CORDREY (Bar No. 190144)
   *gcordrey@jmbm.com*
2  ROD S. BERMAN (Bar No. 105444)
   *rberman@jmbm.com*
3  JESSICA BROMALL SPARKMAN (Bar No. 235017)
   *jbromall@jmbm.com*
4  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
6  Facsimile:  (310) 203-0567

7  Attorneys for Plaintiff Therabody, Inc.

8

9                   UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11  THERABODY, INC., a Delaware          Case No.: 2:21-cv-09079
    corporation,
12                                       **COMPLAINT FOR:**
              Plaintiff,
13                                       **1.) FEDERAL TRADE MARK**
        v.                               **INFRINGEMENT, 15 U.S.C. § 1114;**
14
    LEGEND GROUP INC., a New York        **2.) FEDERAL FALSE**
15  corporation; and DOES 1 through 10,  **DESIGNATION OF ORIGIN, 15**
    inclusive,                           **U.S.C. § 1125(a);**
16
              Defendants.                **3.) FEDERAL UNFAIR**
17                                       **COMPETITION, 15 U.S.C.**
                                         **§ 1125(a);**
18
                                         **4.) COMMON LAW TRADE DRESS**
19                                       **INFRINGEMENT;**

20                                       **5.) INFRINGEMENT OF U.S.**
                                         **PATENT NOS. 10,702,448,**
21                                       **10,857,064, 11,160,722, D880,714,**
                                         **D880,715, D885,601, D887,573,**
22                                       **D880,716, D896,396, D879,985,**
                                         **D879,986, D884,915; AND**
23
                                         **6.) UNFAIR BUSINESS**
24                                       **PRACTICES, CAL. BUS. & PROF.**
                                         **CODE § 17200 *ET SEQ.***
25
                                         **DEMAND FOR JURY TRIAL**
26

27

28

Plaintiff Therabody, Inc. ("Therabody") files this complaint against defendants Legend Group Inc., ("Legend") and Does 1-10, inclusive (collectively "Defendants").

1.      The Defendants have been and are now infringing Therabody's rights in its trademarks, its unique trade dress, and numerous of its patents by manufacturing, using, selling, offering for sale, or importing various percussive massage device knock-offs, therefor, and in connection with the foregoing, using Therabody's federally registered trademarks and/or its unique and protectable trade dress.

## THE PARTIES

2.      Therabody is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 9420 Wilshire Blvd., Fourth Floor, Beverly Hills, California 90212.

3.      Therabody is informed and believes and, based thereon, alleges that defendant Legend Group Inc. is a New York corporation with offices at 6315 Chalet Drive, Commerce, CA 90040 and 16804 Gridley Place, Cerritos, CA 90703.

4.      Therabody is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Therabody will amend this Complaint to allege their true names and capacities when ascertained, along with the appropriate charging allegations.

5.      Therabody is informed and believes and thereon alleges that Defendants are manufacturing, using, selling, or offering for sale within the United States, or importing into the United States the infringing percussive massage device described below.

6.      Therabody is informed and believes and thereon alleges that each of the Defendants conspired and acted in concert with one or more other Defendants to commit the wrongs against Therabody alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other. Therabody is further informed and believes and on that

1   basis alleges that, in doing the things alleged in this Complaint, each of the Defendants
2   was acting within the scope of authority conferred upon that Defendant by the
3   consent, approval, and/or ratification of one or more of the other Defendants.

### JURISDICTION AND VENUE

5   7.     This is an action for (a) trademark and trade dress infringement under
6   Section 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125; (b) trademark and trade dress
7   infringement under the laws of the state of California; (c) patent infringement under
8   the patent laws of the United States, 35 U.S.C. § 271; and (d) unfair competition
9   pursuant to California Business and Professions Code Section 17200, *et seq*.

10  8.     This Court has subject matter jurisdiction over the trade dress and patent
11  claims in this action pursuant to 28 U.S.C. §1338(a) and 15 U.S.C. §1121. This Court
12  has supplemental jurisdiction over the remaining state law claims under 28 U.S.C.
13  §1367 because the claims are so related to Therabody's claims under federal law that
14  they derive from a common nucleus of operative fact and form part of the same case
15  or controversy.

16  9.     This Court has personal jurisdiction over Defendants and venue is proper
17  in this District pursuant to 28 U.S.C. § 1391(b) and § 1400(b). Therabody is informed
18  and believes and, based thereon, alleges that, defendant Legend has offices in this
19  District, including at 6315 Chalet Drive, Commerce, CA 90040 and 16804 Gridley
20  Place, Cerritos, CA 90703, and that Defendants have committed acts of infringement
21  in this District, including the distribution, promoting, marketing, selling, offering for
22  sale, importing, and/or advertising their infringing products in or to this District and/or
23  to businesses and individuals in this District. Therabody is further informed and
24  believes and, based thereon, alleges that Defendants derive substantial revenue from
25  the distribution, promotion, marketing, sale, offer for sale, or import of infringing
26  products in or to this District. Finally, Defendants infringing acts are causing harm to
27  Therabody, a resident of this District.

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

## GENERAL ALLEGATIONS

### Therabody's Trade Dress and Trademarks

10.     Therabody is in the business of developing, manufacturing and selling high-quality, innovative percussive therapy devices. Therabody invests considerable time, effort, and money in developing and protecting its intellectual property, including the trade dress of its products.

11.     Since at least as early as January 2019, Therabody has used a distinctive triangle product design trade dress, examples of which are shown below (the "Triangle Trade Dress").



12.     The Triangle Trade Dress, shown in the above images, features: (1) a percussive massage device generally in the shape of a right triangle, comprising one shorter leg, one longer leg, and one hypotenuse; (2) a thick longer leg, a shorter leg of relative less thickness, and a hypotenuse that is relatively thinner than both legs; (3) a circular design or "head" at the corner where the hypotenuse and the longer leg meet; and (4) an arm to which massage head attachments are attached extending from the circular head.

13.     Therabody introduced the Triangle Trade Dress with its third-generation percussive massage device, which were introduced at least as early as January 2019. Therabody's line of third-generation percussive massage device included three the

percussive massage devices available at three price points. All three of Therabody's third-generation percussive massage devices featured the Triangle Trade Dress. The third-generation percussive massage devices at the two highest price points featured the Triangle Trade Dress, plus an additional design element, namely, a key-shaped design element formed by combination of the circular head and the longer leg itself (highlighted in the images below). The combination of the Triangle Trade Dress and the key-shaped design element is referred to herein as the Key Trade Dress.

14.     The most advanced, most refined, and most expensive of the three third-



generation percussive massage devices was called the THERAGUN G3PRO. The trade dress for the THERAGUN G3PRO included the Key Trade Dress, plus the following additional elements: (1) the circular head is a distinctive, metallic blue color; (2) on one side of the percussive massage device, the circular head is solid blue; (3) the THERAGUN mark is displayed at the opposite end of the longer leg from the circular head; and (4) the outer surfaces of the legs and hypotenuse feature a cross hatch texture (all as shown in the images below). The combination of the Key Trade Dress and the foregoing elements is referred to herein as the PRO Trade Dress.




15.     Therabody's line of fourth-generation percussive massage device were introduced at least as earl as May 2020. The line includes three percussive massage device bearing the Triangle Trade Dress, each at different price points. The fourth-generation percussive massage devices at the two highest price points, the THERAGUN PRO and the THERAGUN ELITE, also feature the Key Trade Dress. The THERAGUN PRO is most advanced, most refined, and most expensive of the three products. Like the THERAGUN G3PRO, the THERAGUN PRO also bears the PRO Trade Dress.

16.     Therabody has developed trade dress rights in the Triangle Trade Dress. The Triangle Trade Dress is not functional: it does not provide a utilitarian advantage, a plethora of alternative product shapes and designs are available for use, and their use is not the result of a simple or inexpensive method of manufacture. Therabody selected the elements of the Triangle Trade Dress for the purpose of identifying its products and distinguishing them from the products of third parties.

17.     The Triangle Trade Dress is either inherently distinctive or, through Therabody's continuous use and promotion, has acquired distinctiveness, and the Triangle Trade Dress is uniquely associated with Therabody and its percussive massage device. Therabody has used the Triangle Trade Dress since it introduced its third-generation percussive massage devices at least as early as January 2019.

18.     Therabody has developed trade dress rights in the Key Trade Dress. The Key Trade Dress is not functional: it does not provide a utilitarian advantage, a plethora of alternative product shapes and designs are available for use, and their use is not the result of a simple or inexpensive method of manufacture. Therabody selected the elements of the Key Trade Dress for the purpose of identifying its products and distinguishing them from the products of third parties.

19.     The Key Trade Dress is either inherently distinctive or, through Therabody's continuous use and promotion, has acquired distinctiveness, and the Key Trade Dress is uniquely associated with Therabody and its percussive massage device.

Therabody has used the Key Trade Dress since it introduced its third-generation percussive massage devices at least as early as January 2019.

20. Therabody has developed trade dress rights in the PRO Trade Dress. The PRO Trade Dress is not functional: it does not provide a utilitarian advantage, a plethora of alternative product colors, shapes, and designs are available for use, and their use is not the result of a simple or inexpensive method of manufacture. Therabody selected the elements of the PRO Trade Dress for the purpose of identifying its products and distinguishing them from the products of third parties.

21. The PRO Trade Dress is either inherently distinctive or, through Therabody's continuous use and promotion, has acquired distinctiveness, and the PRO Trade Dress is uniquely associated with Therabody and its percussive massage device. Therabody has used the PRO Trade Dress since it introduced its third-generation percussive massage devices at least as early as January 2019.

22. Therabody has sold millions of dollars of products bearing its distinctive Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress. It has spent millions of dollars to promote its products bearing its Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress. Therabody products bearing the Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress are used by numerous celebrities and professional athletes and have been the subject of extensive press and advertising. As a result of Therabody's extensive advertising and promotion and the widespread, and high profile, use of Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress, including as described above, Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress are associated by the public exclusively with Therabody and its products and are used by the public as indicators of the origin and quality of Therabody's percussive massage device.

23. Additionally, Defendants' have copied Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress, as have numerous third parties. Such

copying is further evidence that Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress have secondary meaning.

24.     Therabody owns the trademarks THERAGUN G3PRO, THERAGUN PRO, and THERAGUN ELITE, which trademarks are the subject of U.S. Reg. Nos. 6043891, 6,126,362 and 6,126,363, all for, *inter alia*, massage apparatus.

25.     Therabody is a pioneer in the percussive massage therapy device market and, by delivering premier-quality products using its Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress and THERAGUN G3PRO, THERAGUN PRO, and THERAGUN ELITE marks, Plaintiff has established a reputation for providing outstanding massage therapy products and customer service associated with that trade dress and those trademarks. Consumers have come to recognize that trade dress and those trademarks as indicators of excellence and as uniquely identifying Therabody as the source of the products and services associated in connection with which they are used.

<u>Therabody's Patents</u>

26.     On July 7, 2020, the United States Patent and Trademark Office issued United States Patent Number 10,702,448, entitled "Percussive Massage Device and Method of Use" (hereinafter the " '448 Patent"). A true and correct copy of the '448 Patent is attached hereto as Exhibit 1.

27.     Therabody is the owner of the '448 Patent. The '448 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in '448 Patent are novel and non-obvious.

28.     The '448 Patent pertains to a percussive massage device and method of using a percussive massage device.

29.     On December 8, 2020, the United States Patent and Trademark Office issued United States Patent Number 10,857,064, entitled "Percussive Therapy Device" (hereinafter the " '064 Patent"). A true and correct copy of the '064 Patent is attached hereto as Exhibit 2.

30.     Therabody is the owner of the '064 Patent. The '064 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '064 Patent are novel and non-obvious.

31.     The '064 Patent pertains to a percussive massage device and method of using a percussive massage device.

32.     On November 2, 2021, the United States Patent and Trademark Office issued United States Patent Number 11,160,722, entitled "Percussive Massage Device and Method of Use" (hereinafter the " '722 Patent"). A true and correct copy of the '722 Patent is attached hereto as Exhibit 3.

33.     Therabody is the owner of the '722 Patent. The '722 Patent is presumed to be valid and is *prima facie* proof that the inventions claimed in the '722 Patent are novel and non-obvious.

34.     The '722 Patent pertains to a percussive massage device and method of using a percussive massage device.

35.     On April 7, 2020, the United States Patent and Trademark Office issued United States Patent Number D880,714, entitled "Percussive Massage Device" (hereinafter the " 'D714 Patent"). A true and correct copy of the 'D714 Patent is attached hereto as Exhibit 4.

36.     Therabody is the owner of the 'D714 Patent. The 'D714 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D714 Patent is novel and non-obvious.

37.     The 'D714 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

38.     On April 7, 2020, the United States Patent and Trademark Office issued United States Patent Number D880,715, entitled "Percussive Massage Device" (hereinafter the " 'D715 Patent"). A true and correct copy of the 'D715 Patent is attached hereto as Exhibit 5.

39.     Therabody is the owner of the 'D715 Patent. The 'D715 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D715 Patent is novel and non-obvious.

40.     The 'D715 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

41.     On May 26, 2020, the United States Patent and Trademark Office issued United States Patent Number D885,601, entitled "Percussive Massage Device" (hereinafter the " 'D601 Patent"). A true and correct copy of the 'D601 Patent is attached hereto as Exhibit 6.

42.     Therabody is the owner of the 'D601 Patent. The 'D601 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D601 Patent is novel and non-obvious.

43.     The 'D601 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

44.     On June 16, 2020, the United States Patent and Trademark Office issued United States Patent Number D887,573, entitled "Percussive Massage Device" (hereinafter the " 'D573 Patent"). A true and correct copy of the 'D573 Patent is attached hereto as Exhibit 7.

45.     Therabody is the owner of the 'D573 Patent. The 'D573 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D573 Patent is novel and non-obvious.

46.     The 'D573 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

47.     On April 7, 2020, the United States Patent and Trademark Office issued United States Patent Number D880,716, entitled "Percussive Massage Device" (hereinafter the " 'D716 Patent"). A true and correct copy of the 'D716 Patent is attached hereto as Exhibit 8.

48.    Therabody is the owner of the 'D716 Patent. The 'D716 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D716 Patent is novel and non-obvious.

49.    The 'D716 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

50.    On September 15, 2020, the United States Patent and Trademark Office issued United States Patent Number D896,396, entitled "Percussive Massage Device" (hereinafter the " 'D396 Patent"). A true and correct copy of the 'D396 Patent is attached hereto as Exhibit 9.

51.    Therabody is the owner of the 'D396 Patent. The 'D396 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D396 Patent is novel and non-obvious.

52.    The 'D396 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

53.    On March 31, 2020, the United States Patent and Trademark Office issued United States Patent Number D879,985, entitled "Percussive Massage Device" (hereinafter the " 'D985 Patent"). A true and correct copy of the 'D985 Patent is attached hereto as Exhibit 10.

54.    Therabody is the owner of the 'D985 Patent. The 'D985 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D985 Patent is novel and non-obvious.

55.    The 'D985 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

56.    On March 31, 2020, the United States Patent and Trademark Office issued United States Patent Number D879,986, entitled "Percussive Massage Device" (hereinafter the " 'D986 Patent"). A true and correct copy of the 'D986 Patent is attached hereto as Exhibit 11.

57.     Therabody is the owner of the 'D986 Patent. The 'D986 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D986 Patent is novel and non-obvious.

58.     The 'D986 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

59.     On May 19, 2020, the United States Patent and Trademark Office issued United States Patent Number D884,915, entitled "Percussive Massage Device" (hereinafter the " 'D915 Patent"). A true and correct copy of the 'D915 Patent is attached hereto as Exhibit 12.

60.     Therabody is the owner of the 'D915 Patent. The 'D915 Patent is presumed to be valid and is *prima facie* proof that the design shown in the 'D915 Patent is novel and non-obvious.

61.     The 'D915 Patent pertains to a particular ornamental design for a therapeutic percussive massage device.

62.     Therabody's patented and patent-pending devices are innovative and have received industry praise and recognition, including the 2019 A' Design Award in Digital and Electronic Devices Design for its Therabody G3PRO design.

## Defendant's Infringing Conduct

63.     Therabody is informed and believes and based thereon alleges that Defendant recently began competing with Therabody in the percussive massage device industry by manufacturing and selling percussive massage devices infringing Therabody's trade dress, trademarks and patents. Specifically, Defendant manufactures and sells: 1) TRAKK PRO percussive massage device (the "First Infringing Device") and TRAKK ELITE percussive massage device (the "Second Infringing Device") (collectively, the "Infringing Products").

64.     On or about August 11, 2021, Therabody first became aware of Defendant's First Infringing Device (shown below) through Defendant's Amazon retail page. On August 11, 2021, Therabody sent a cease-and-desist letter demanding

that Defendants immediately end their use of infringing trade dress and all manufacture, offer for sale, sale, use and importation of the Infringing Products. Since then, Therabody has seen these same infringing products being promoted in a number of locations, including on Walmart, Staples and Office Depot websites as well as Defendant's website at https://www.shoptrakk.com/.

65.     On or about September 23, 2021, Therabody first became aware of Defendant's Second Infringing Device (shown below) through Defendant's website at https://www.shoptrakk.com/ as well as multiple major e-commerce platforms such as Amazon and Newegg, and major retailers such as Office Depo, Walmart, Radio Shack. On September 23, 2021, Therabody sent a cease-and-desist letter demanding that Defendants immediately end their use of infringing trade dress and all manufacture, offer for sale, sale, use and importation of the Infringing Products.




First Infringing Device          Second Infringing Device

66.     It is clear from their product design and product name selection that Defendants are deliberately imitating Plaintiff. Defendants product design is virtually identical to the Triangle Trade Dress, Key Trade Dress, and the PRO Trade Dress. Defendants have adopted both PRO and ELITE as names for its percussive massage device.

67.     As described herein, the Infringing Products infringe numerous Therabody patents. Additionally, the First Infringing Device incorporates each element of the Triangle Trade Dress, Key Trade Dress, and the PRO Trade Dress. The First Infringing Device uses the name TRAKK PRO.

68.     Defendants' conduct is likely to cause confusion or mistake, or to deceive members of the public into believing that Defendants or their percussive massage device are approved, sponsored, endorsed, or licensed by, or affiliated, associated, or otherwise connected with Therabody, which is not the case. Such confusion, mistake, or deception will inevitably continue after the sale of the products, as consumers continue to encounter Defendants' infringing products at gyms, in therapists or doctors' offices, or in other post-sale contexts, and as a result of such post-sale confusion the harm to Therabody's reputation will continue and be amplified.

69.     Notwithstanding Therabody's demand that Defendants cease their infringing conduct and in conscious disregard of Therabody's intellectual property rights as set forth herein, Defendants have continued to use the Infringing Products, Trade Dress and Trademarks in conjunction with their percussive massage devices and in direct competition with Therabody.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement, 15 U.S.C. § 1114

(Against All Defendants)

70.     Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

71.     Therabody owns the trademarks THERAGUN G3PRO, THERAGUN PRO, and THERAGUN ELITE (collectively, the "Trademarks"), which are the subject of U.S. Reg. Nos. 6043891, 6,126,362 and 6,126,363, all for, *inter alia*, massage apparatus.

72.    Defendants, without Therabody's permission or consent, have used and are continuing to use, marks that are confusingly similar to the Trademarks, namely, TRAKK PRO and TRAKK ELITE, in connection with the advertising, promotion, sale, and offer for sale of percussive massage devices, including products that bear trade dress that is virtually identical to Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress and are virtual copies of Therabody's patented products.

73.    Defendants' use of TRAKK PRO and TRAKK ELITE marks on percussive massage devices is likely to deceive or to cause confusion, or reverse confusion, or to cause mistake among consumers as to source, origin, sponsorship, affiliation, approval, and/or association. Consumer confusion is exacerbated by (1) Defendants' adoption of not one but two infringing marks – just as Plaintiff's product line includes products designated as THERAGUN *PRO* and THERAGUN *ELITE*, Defendants competing product line includes products designated as TRAKK *PRO* and TRAKK *ELITE*; and (2) Defendants' use of its marks on products that bear trade dress that is virtually identical to Therabody's Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress and are virtual copies of Therabody's patented products.

74.    Defendants' conduct described herein was knowing, willful, intentional, deliberate, and in total disregard of Therabody's rights. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

75.    As a direct and proximate cause of Defendants' unlawful, intentional and willful conduct, Therabody has been and will continue to be irreparably harmed unless Defendants are temporarily, preliminarily, and permanently enjoined from such unlawful conduct.

76.    Therabody has no adequate remedy at law. Unless enjoined, Defendants will continue their unlawful, intentional, and willful conduct.

77.    In light of the foregoing, Therabody is entitled to a permanent injunction prohibiting Defendants from using TRAKK PRO and TRAKK ELITE, and any name,

JMBM | Jeffer Mangels Butler & Mitchell LLP

service mark, or logo confusingly similar to the federally registered Trademarks, including PRO and ELITE, and to recover from Defendants all damages that Therabody has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of the infringing acts alleged above, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a).

78.    Given Defendants' willful acts, this is an exceptional case and, pursuant to 15 U.S.C. § 1117(a), Therabody is further entitled to three times the amount of the above profits or damages, whichever is greater, and their attorneys' fees.

## SECOND CAUSE OF ACTION

### False Designation of Origin, 15 U.S.C. § 1125(a)

(Against All Defendants)

79.    Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

80.    Therabody uses its Triangle Trade Dress, Key Trade Dress, and PRO Trade Dress (collectively, the "Therabody Trade Dress") in commerce on and in connection with its percussive massage device, accessories therefor, and the advertising and promotion of the same. The Therabody Trade Dress, described above, is comprised of distinctive features which are protected under Lanham Act § 43(a). The Therabody Trade Dress is either inherently distinctive or, as a result of its use, has acquired secondary meaning whereby the relevant consuming public and the trade associate these features with a single source.

81.    As described above and shown below, Defendants have used in commerce trade dress that is confusingly similar to the unique and protectable Therabody Trade Dress (hereinafter the "Infringing Trade Dress"), on and in connection with their sale of percussive massage device and accessories therefor. The Infringing Trade Dress includes each element of the Triangle Trade Dress, each element of the Key Trade Dress, and each element of the PRO Trade Dress. As described above, the potential for confusion is amplified by the use of the Infringing

1  Trade Dress in connection with products that, in whole or in part, are copies or knock-
2  offs of Therabody's own products, as well as by Defendants' adoption of the product
3  names TRAKK PRO and TRAKK ELITE, which are virtually the same Therabody's
4  own product names THERAGUN G3PRO, THERAGUN PRO, and THERAGUN
5  ELITE.



14  82.   Defendants' conduct alleged herein constitutes a false designation of
15  origin and/or a false or misleading description and/or representation of fact, which is
16  likely to deceive or to cause confusion or reverse confusion or mistake among
17  consumers as to the origin, sponsorship, or approval of the Defendants' goods and
18  services and/or deceive or to cause confusion or mistake among consumers as to the
19  affiliation, connection, or association between Defendants and Therabody.

20  83.   Defendants' conduct described herein was knowing, willful, intentional,
21  deliberate, and in total disregard of Therabody's rights. The knowing and intentional
22  nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. §
23  1117(a).

24  84.   As a direct and proximate cause of Defendants' unlawful, intentional,
25  and willful conduct, Therabody has been and will continue to be irreparably harmed
26  unless Defendants are permanently enjoined from such unlawful conduct. Therabody
27  has no adequate remedy at law. Unless enjoined, Defendants will continue to mislead
28  and confuse consumers as to the origin, sponsorship, or approval of Defendants'

goods and services and/or deceive or cause confusion or mistake among consumers as to the affiliation, connection, or association between Defendants and Therabody.

85. In light of the foregoing, Therabody is entitled to a permanent injunction prohibiting Defendants from using the Infringing Trade Dress, and any marks or trade dress confusingly similar to any of the Therabody Trade Dress, and to recover from Defendants all damages that Therabody has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above, in an amount not yet known, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

86. Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to, and hereby seeks, an order for the destruction of all materials bearing the Infringing Trade Dress, or any other trade dress confusingly similar to any of the Therabody Trade Dress.

87. Given Defendants' willful acts, this is an exceptional case and, pursuant to 15 U.S.C. § 1117(a), Therabody is further entitled to three times the amount of the above profits or damages, whichever is greater, and their attorneys' fees.

## THIRD CAUSE OF ACTION

### Federal Unfair Competition, 15 U.S.C. § 1125(a)

(Against All Defendants)

88. Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

89. Defendants have deliberately and willfully attempted to capitalize on Therabody's goodwill and reputation established in connection with the Trademarks and the Therabody Trade Dress by misleading, confusing, or deceiving consumers as to source, source, origin, affiliation, approval, sponsorship, and/or association, including by using TRAKK PRO and TRAKK ELITE and including by copying and using each element of the Triangle Trade Dress, each element of the Key Trade Dress, and each element of the PRO Trade Dress.

JMBM | Jeffer Mangels Butler & Mitchell LLP

90.     Defendants have engaged in, and continue to engage in, their unlawful, intentional, and willful conduct without Therabody's permission or consent.

91.     As a direct and proximate cause of Defendants unlawful, intentional, and willful conduct, Therabody has been and will continue to be irreparably harmed unless Defendants are permanently enjoined from such unlawful conduct. Therabody has no adequate remedy at law. Unless enjoined, Defendants will continue their unlawful, intentional, and willful conduct.

92.     In light of the foregoing, Therabody is entitled to a permanent injunction prohibiting Defendants from using TRAKK PRO and TRAKK ELITE, the Infringing Trade Dress, and any marks or trade dress confusingly similar to any of Therabody's Trademarks or any of the Therabody Trade Dress, including PRO and ELITE, and to recover from Defendants all damages that Therabody has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

93.     Pursuant to 15 U.S.C. § 1118, Therabody is entitled to, and hereby seeks, an order for the destruction of all materials bearing any of the Trademarks, the Infringing Trade Dress, or any other trade dress confusingly similar to any of the Therabody Trade Dress.

94.     Given Defendants' willful acts, this is an exceptional case and, pursuant to 15 U.S.C. § 1117(a), Therabody is further entitled to three times the amount of the above profits or damages, whichever is greater, and their attorneys' fees.

## FOURTH CAUSE OF ACTION

### Common Law Trademark and Trade Dress Infringement

### (Against All Defendants)

95.     Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

96.   Defendants' acts, described herein, constitute common law trade dress and trademark infringement and unfair competition under state law.

97.   Therabody has been damaged and will continue to be damaged by Defendants' infringing activities.

98.   Therabody has no adequate remedy at law and is entitled to an injunction prohibiting Defendants from continuing the infringing practices described herein, and a recall order directed to the infringing items in the marketplace.

99.   Therabody is also entitled to an award of any profits and damages arising from Defendants' wrongful use of any of Therabody's Trademarks and/or any of the Therabody Trade Dress.

100.  Therabody is informed and believes, on that basis alleges, that Defendants conduct was willful, wanton, malicious, and in conscious disregard of Therabody's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**Patent Infringement of the '448 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

101.  Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

102.  At all times herein mentioned the '448 Patent was and is valid and fully enforceable.

103.  Defendants are offering percussive massage devices that infringe at least claim 8 of the '448 Patent, including at least the Infringing Product.

104.  Defendants' Infringing Product is a percussive massage device.

105.  As shown below, Defendants' Infringing Product includes a housing, wherein the housing includes first, second and third handle portions that cooperate to define a handle opening.



106.   As shown above, Defendants' Infringing Product includes a first handle portion that defines a first axis, a second handle portion defines a second axis and a third handle portion defines a third axis, and wherein the first, second and third axes cooperate to form a triangle.

107.   As shown above, the Infringing Product includes that the first handle portion is generally straight, the second handle portion is generally straight, and that the third handle portion is generally straight, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device.

108.   The Infringing Product includes an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

109.   The Infringing Product includes switch electronics associated with the switch, the electrical source is a battery that is housed in the second handle portion, and the switch electronics are housed in the first handle portion.

110.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '448 Patent claims by, *inter alia,* marketing, promoting, and offering for

use the Infringing Product, knowingly and intending that the use of the Infringing Product by Defendants' customers and by users infringes the '448 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Product knowing that its purchase and use infringes one or more claims of the '448 Patent.

111. On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the '448 Patent by their customers and users of the Infringing Product by, *inter alia,* making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '448 Patent. The Infringing Product is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '448 Patent. As a result, Defendants' Infringing Product has been used by its customers and by users to infringe the '448 Patent. Defendants continue to engage in acts of contributory infringement of the '448 Patent even after receiving notice of its contributory infringement.

112. Defendants infringe literally or under the doctrine of equivalents, or both.

113. At no time has Therabody granted Defendants authorization, license, or permission to utilize the inventions claimed in the '448 Patent.

114. Therabody has been damaged by Defendants' acts of infringement of the '448 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

115. Therabody is, and has been, irreparably harmed by Defendants' on-going infringement including the following harm which cannot be quantified or recouped

through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Infringing Product becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in developing the market for percussive devices and its patented attachments, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Product being sold at a price point lower than Therabody's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Product, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

116.  Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

<u>**SIXTH CAUSE OF ACTION**</u>

**Patent Infringement of the '064 Patent, 35 U.S.C. §§ 101 et seq.**

(Against All Defendants)

117.  Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

118.  At all times herein mentioned the '064 Patent was and is valid and fully enforceable.

119.  Defendants are offering percussive massage devices that infringe at least claim 11 of the '064 Patent, including at least the Infringing Product.

120.  The Infringing Product is a percussive massage device.

121.   As shown below, the Infringing Product includes a housing, wherein the housing includes first, second and third handle portions and a head portion that cooperate to define a handle opening, wherein the first handle portion defines a first axis, the second handle portion defines a second axis and the third handle portion defines a third axis, wherein the first, second and third axes cooperate to form a triangle, such that a user can grasp any of the first, second or third handle portions independently to use the percussive therapy device.



122.   The Infringing Product includes an electrical source, a motor positioned in the head portion of the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

123.   As shown below, the Infringing Product includes a first handle portion interior edge and defines a first handle portion length, wherein the first handle portion length is long enough that when a user grasps the first handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the first handle portion interior edge, wherein the second handle portion includes a second handle portion interior edge and defines a second handle portion length, wherein the second handle portion length is long enough that when a user grasps the second handle

portion with a hand at least a portion of three fingers extend through the handle opening and contact the second handle portion interior edge, wherein the third handle portion includes a third handle portion interior edge and defines a third handle portion length, wherein the third handle portion length is long enough that when a user grasps the third handle portion with a hand at least a portion of three fingers extend through the handle opening and contact the third handle portion interior edge.



124. The Infringing Product includes at least two of the first handle portion, second handle portion and third handle portion are generally straight.

125. The Infringing Product includes a fourth interior surface that at least partially defines the handle opening, wherein the first handle portion interior surface, second handle portion interior surface, third handle portion interior surface and fourth interior surface cooperate to define a quadrilateral.

126. Defendants' infringe literally or under the doctrine of equivalents, or both.

127. On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the '064 Patent claims by, inter alia, marketing, promoting, and offering for use the Infringing Product, knowingly and intending that the use of the Infringing

Product by Defendants' customers and by users infringes the '064 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Product knowing that its purchase and use infringes one or more claims of the '064 Patent.

128.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the '064 Patent by their customers and users of the Infringing Product by, inter alia, making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '064 Patent. The Infringing Product is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '064 Patent. As a result, Defendants' Infringing Product has been used by its customers and by users to infringe the '064 Patent. Defendants continue to engage in acts of contributory infringement of the '064 Patent even after receiving notice of its contributory infringement.

129.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '064 Patent.

130.   Therabody has been damaged by Defendants' acts of infringement of the '064 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

131.   Therabody is, and has been, irreparably harmed by Defendants' on-going infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Infringing Product becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover

Jeffer Mangels
Butler & Mitchell LLP
JMBM

advantage that Therabody enjoyed as the first company to offer its innovative and patented percussive devices, (3) loss of Therabody's investment in developing the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Product being sold at a price point lower than Therabody's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Product, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

132.   Defendants' acts of infringement have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## SEVENTH CAUSE OF ACTION

### Patent Infringement of the '722 Patent, 35 U.S.C. §§ 101 et seq.

(Against All Defendants)

133.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

134.   At all times herein mentioned the '722 Patent was and is valid and fully enforceable.

135.   Defendants are offering percussive massage devices that infringe at least claim 18 of the '722 Patent, including at least the Infringing Product.

136.   The Infringing Product is a percussive massage device.

137.   As shown below, the Infringing Product includes a housing, wherein the housing includes first, second and third handle portions that cooperate to at least partially define a handle opening, wherein the first handle portion includes a first handle portion interior edge, wherein the second handle portion includes a second handle portion interior edge, wherein the third handle portion includes a third handle portion interior edge, wherein the first handle portion interior edge defines a first

handle portion interior edge extended, wherein the second handle portion interior edge defines a second handle portion interior edge extended, wherein the third handle portion interior edge defines a third handle portion interior edge extended, wherein the first, second and third interior edges extended cooperate to define a triangle that surrounds the handle opening, such that a user can grasp any of the first, second or third handle portions independently to use the percussive massage device.



138.   The Infringing Product includes an electrical source, a motor positioned in the housing, a switch for activating the motor, and a push rod assembly operatively connected to the motor and configured to reciprocate in response to activation of the motor.

139.   As shown above, the Infringing Product includes a housing with a head portion that at least partially defines the handle opening, wherein the head portion defines a head portion interior edge that is generally straight.

140.   Defendants' infringe literally or under the doctrine of equivalents, or both.

141.   On information and belief, at least since the filing of the complaint, Defendants have knowingly and actively induced the infringement of one or more of the '722 Patent claims by, inter alia, marketing, promoting, and offering for use the

Infringing Product, knowingly and intending that the use of the Infringing Product by Defendants' customers and by users infringes the '722 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the Infringing Product knowing that its purchase and use infringes one or more claims of the '722 Patent.

142.   On information and belief, at least since the filing of the complaint, Defendants have contributed to the infringement of the '722 Patent by their customers and users of the Infringing Product by, inter alia, making, offering to sell, selling and/or importing into the United States, a component of a patented machine, manufacture or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '722 Patent. The Infringing Product is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the '722 Patent. As a result, Defendants' Infringing Product has been used by its customers and by users to infringe the '722 Patent. Defendants continue to engage in acts of contributory infringement of the '722 Patent even after receiving notice of its contributory infringement.

143.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the '722 Patent.

144.   Therabody has been damaged by Defendants' acts of infringement of the '722 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

145.   Therabody is, and has been, irreparably harmed by Defendants' on-going infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the Infringing Product becomes entrenched with retail

sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative and patented percussive devices, (3) loss of Therabody's investment in developing the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' Infringing Product being sold at a price point lower than Therabody's patented products, (7) diversion of resources to defend against loss of market share caused by sales of the Infringing Product, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

146.   Defendants' acts of infringement have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284

## EIGHTH CAUSE OF ACTION

### Patent Infringement, 35 U.S.C. §§ 101 *et seq.*

'D714 Patent

(Against All Defendants)

147.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

148.   At all times herein mentioned the 'D714 Patent was and is valid and fully enforceable.

149.   Defendants are offering percussive massage devices that infringe the 'D714 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D714 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device appears substantially the same as Therabody's 'D714 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer

would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D714 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, and (d) circular medallion on the rounded head portion:

 

150.   Defendants have and continue to directly infringe the 'D714 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

151.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

152.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D714 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D714 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D714 Patent.

153.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D714 Patent by, *inter*

*alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D714 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D714 Patent. Defendants continue to engage in acts of contributory infringement of the 'D714 Patent even after receiving notice of their contributory infringement.

154.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D714 Patent.

155.   Therabody has been damaged by Defendants' acts of infringement of the 'D714 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

156.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

157.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## NINTH CAUSE OF ACTION

### Patent Infringement, 35 U.S.C. §§ 101 *et seq.*

'D715 Patent

(Against All Defendants)

158.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

159.   At all times herein mentioned the 'D715 Patent was and is valid and fully enforceable.

160.   Defendants are offering percussive massage devices that infringe the 'D715 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D715 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device appears substantially the same as Therabody's 'D715 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D715 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, (d) circular medallion on the rounded head portion, and (e) a key-design extending from the rounded head portion along the third handle portion:

 

161.   Defendants have and continue to directly infringe the 'D715 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

162.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

163.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D715 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D715 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D715 Patent.

164.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D715 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D715 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D715

Patent. Defendants continue to engage in acts of contributory infringement of the 'D715 Patent even after receiving notice of their contributory infringement.

165.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D715 Patent.

166.   Therabody has been damaged by Defendants' acts of infringement of the 'D715 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

167.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

168.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## **TENTH CAUSE OF ACTION**

### **Patent Infringement, 35 U.S.C. §§ 101 *et seq.***

'D716 Patent

(Against All Defendants)

169.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

170.   At all times herein mentioned the 'D716 Patent was and is valid and fully enforceable.

171.   Defendants are offering percussive massage devices that infringe the 'D716 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D716 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device appears substantially the same as Therabody's 'D716 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D716 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, (d) circular medallion on the rounded head portion, and (e) a key-design extending from the rounded head portion along the third handle portion:



172.   Defendants have and continue to directly infringe the 'D716 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

173.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

174.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D716 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D716 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D716 Patent.

175.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D716 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D716 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D716 Patent. Defendants continue to engage in acts of contributory infringement of the 'D716 Patent even after receiving notice of their contributory infringement.

176.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D716 Patent.

177.   Therabody has been damaged by Defendants' acts of infringement of the 'D716 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

178.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

179.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## ELEVENTH CAUSE OF ACTION

### Patent Infringement, 35 U.S.C. §§ 101 *et seq.*

'D985 Patent

(Against All Defendants)

180.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

181.   At all times herein mentioned the 'D985 Patent was and is valid and fully enforceable.

JMBM  Jeffer Mangels
Butler & Mitchell LLP

182.   Defendants are offering percussive massage devices that infringe the 'D985 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D985 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device appears substantially the same as Therabody's 'D985 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D985 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, (d) circular medallion on the rounded head portion, and (e) a key-design extending from the rounded head portion along the third handle portion:



183.   Defendants have and continue to directly infringe the 'D985 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

184.  Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

185.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D985 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D985 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D985 Patent.

186.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D985 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D985 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D985 Patent. Defendants continue to engage in acts of contributory infringement of the 'D985 Patent even after receiving notice of their contributory infringement.

187.  At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D985 Patent.

188.  Therabody has been damaged by Defendants' acts of infringement of the 'D985 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

189.  Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not

impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

190.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## TWELVETH CAUSE OF ACTION

### Patent Infringement, 35 U.S.C. §§ 101 *et seq.*

'D986 Patent

(Against All Defendants)

191.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

192.   At all times herein mentioned the 'D986 Patent was and is valid and fully enforceable.

193.   Defendants are offering percussive massage devices that infringe the 'D986 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D986 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device

appears substantially the same as Therabody's 'D986 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D986 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, and (d) circular medallion on the rounded head portion:



194. Defendants have and continue to directly infringe the 'D986 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

195. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

196. On information and belief, at least since the filing of this complaint, Defendants have knowingly and actively induced the infringement of one or more of the 'D986 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D986 Patent. For

example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D986 Patent.

197.   On information and belief, at least since the filing of this complaint, Defendants have contributed to the infringement of the 'D986 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D986 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D986 Patent. Defendants continue to engage in acts of contributory infringement of the 'D986 Patent even after receiving notice of their contributory infringement.

198.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D986 Patent.

199.   Therabody has been damaged by Defendants' acts of infringement of the 'D986 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

200.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point

1   lower than Therabody's patented product, (7) diversion of resources to defend against

2   loss of market share caused by sales of the First Infringing Device, and (8)

3   Defendants' unauthorized sales that are enticing others to offer for sale and sell

4   infringing attachments that leads to additional irreparable harm described above.

5       201.   Defendants' acts of infringement, including continuing the infringing

6   activities after receiving notice of Defendants' direct and indirect infringement, have

7   been, and continue to be, willful and deliberate and therefore warrant the award of

8   attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages

9   pursuant to 35 U.S.C. § 284.

10                  **THIRTEENTH CAUSE OF ACTION**

11              **Patent Infringement, 35 U.S.C. §§ 101 *et seq.***

12                        'D601 Patent

13                    (Against All Defendants)

14      202.   Therabody realleges and incorporates by reference all foregoing

15   paragraphs as if fully set forth herein.

16      203.   At all times herein mentioned the 'D601 Patent was and is valid and fully

17   enforceable.

18      204.   Defendants are offering percussive massage devices that infringe the

19   'D601 Patent, including at least the First Infringing Device, as shown above. As

20   shown below, a side by side comparison of FIG. 2 of Therabody's 'D601 Patent and

21   Defendants' First Infringing Device quickly reveals that the First Infringing Device

22   appears substantially the same as Therabody's 'D601 Patent to an ordinary observer;

23   the resemblance is such as to deceive such an observer, inducing him or her to

24   purchase one supposing it to be the other. Among other things, an ordinary observer

25   would conclude that the First Infringing Device has a number of the same, or very

26   similar, features as the design patented in the 'D601 Patent that contribute to an

27   overall appearance that is substantially the same, including that both the patented

28   design and First Infringing Device are (a) triangular shaped, (b) have the same relative

JMBM | Jeffer Mangels Butler & Mitchell LLP

dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, and (d) circular medallion on the rounded head portion:



205.  Defendants have and continue to directly infringe the 'D601 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

206.  Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

207.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D601 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D601 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D601 Patent.

208.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D601 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made

or especially adapted to the infringe the 'D601 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D601 Patent. Defendants continue to engage in acts of contributory infringement of the 'D601 Patent even after receiving notice of their contributory infringement.

209.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D601 Patent.

210.   Therabody has been damaged by Defendants' acts of infringement of the 'D601 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

211.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

212.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of

1  attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages

2  pursuant to 35 U.S.C. § 284.

### FOURTEENTH CAUSE OF ACTION

**Patent Infringement, 35 U.S.C. §§ 101 *et seq.***

'D573 Patent

(Against All Defendants)

7  213.  Therabody realleges and incorporates by reference all foregoing

8  paragraphs as if fully set forth herein.

9  214.  At all times herein mentioned the 'D573 Patent was and is valid and fully

10  enforceable.

11  215.  Defendants are offering percussive massage devices that infringe the

12  'D573 Patent, including at least the First Infringing Device, as shown above. As

13  shown below, a side by side comparison of FIG. 2 of Therabody's 'D573 Patent and

14  Defendants' First Infringing Device quickly reveals that the First Infringing Device

15  appears substantially the same as Therabody's 'D573 Patent to an ordinary observer;

16  the resemblance is such as to deceive such an observer, inducing him or her to

17  purchase one supposing it to be the other. Among other things, an ordinary observer

18  would conclude that the First Infringing Device has a number of the same, or very

19  similar, features as the design patented in the 'D573 Patent that contribute to an

20  overall appearance that is substantially the same, including that both the patented

21  design and First Infringing Device are (a) triangular shaped, (b) have the same relative

22  dimensions (e.g., relative lengths of handle portions to one another and the head

23  portion), (c) have a rounded head portion, and (d) circular medallion on the rounded

24  head portion, and (e) a key-design extending from the rounded head portion along the

25  third handle portion:



216.   Defendants have and continue to directly infringe the 'D573 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

217.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

218.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D573 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D573 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D573 Patent.

219.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D573 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D573 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D573 Patent. Defendants continue to engage in acts of contributory infringement of the 'D573 Patent even after receiving notice of their contributory infringement.

220. At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D573 Patent.

221. Therabody has been damaged by Defendants' acts of infringement of the 'D573 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

222. Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

223. Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

1

2

3

4

**FIFTEENTH CAUSE OF ACTION**

**Patent Infringement, 35 U.S.C. §§ 101 *et seq.***

'D396 Patent

(Against All Defendants)

5   224.   Therabody realleges and incorporates by reference all foregoing

6   paragraphs as if fully set forth herein.

7   225.   At all times herein mentioned the 'D396 Patent was and is valid and fully

8   enforceable.

9   226.   Defendants are offering percussive massage devices that infringe the

10  'D396 Patent, including at least the First Infringing Device, as shown above. As

11  shown below, a side by side comparison of FIG. 2 of Therabody's 'D396 Patent and

12  Defendants' First Infringing Device quickly reveals that the First Infringing Device

13  appears substantially the same as Therabody's 'D396 Patent to an ordinary observer;

14  the resemblance is such as to deceive such an observer, inducing him or her to

15  purchase one supposing it to be the other. Among other things, an ordinary observer

16  would conclude that the First Infringing Device has a number of the same, or very

17  similar, features as the design patented in the 'D396 Patent that contribute to an

18  overall appearance that is substantially the same, including that both the patented

19  design and First Infringing Device are (a) triangular shaped, (b) have the same relative

20  dimensions (e.g., relative lengths of handle portions to one another and the head

21  portion), (c) have a rounded head portion, and (d) circular medallion on the rounded

22  head portion, and (e) a key-design extending from the rounded head portion along the

23  third handle portion:

24

25

26

27

28



227.  Defendants have and continue to directly infringe the 'D396 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

228.  Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

229.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D396 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D396 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D396 Patent.

230.  On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D396 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D396 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D396 Patent. Defendants continue to engage in acts of contributory infringement of the 'D396 Patent even after receiving notice of their contributory infringement.

231.  At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D396 Patent.

232.  Therabody has been damaged by Defendants' acts of infringement of the 'D396 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

233.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

234.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## SIXTEENTH CAUSE OF ACTION

### Patent Infringement, 35 U.S.C. §§ 101 *et seq.*

'D915 Patent

(Against All Defendants)

235.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

236.   At all times herein mentioned the 'D915 Patent was and is valid and fully enforceable.

237.   Defendants are offering percussive massage devices that infringe the 'D915 Patent, including at least the First Infringing Device, as shown above. As shown below, a side by side comparison of FIG. 2 of Therabody's 'D915 Patent and Defendants' First Infringing Device quickly reveals that the First Infringing Device appears substantially the same as Therabody's 'D915 Patent to an ordinary observer; the resemblance is such as to deceive such an observer, inducing him or her to purchase one supposing it to be the other. Among other things, an ordinary observer would conclude that the First Infringing Device has a number of the same, or very similar, features as the design patented in the 'D915 Patent that contribute to an overall appearance that is substantially the same, including that both the patented design and First Infringing Device are (a) triangular shaped, (b) have the same relative dimensions (e.g., relative lengths of handle portions to one another and the head portion), (c) have a rounded head portion, and (d) circular medallion on the rounded head portion, and (e) a key-design extending from the rounded head portion along the third handle portion:



238.   Defendants have and continue to directly infringe the 'D915 Patent by making, using, offering for sale, selling and importing the First Infringing Device in conjunction with percussive massage devices competitive to Therabody.

239.   Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

240.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have knowingly and actively induced the infringement of one or more of the 'D915 Patent claims by, *inter alia,* marketing, promoting, and offering for use the First Infringing Device, knowingly and intending that the use of the First Infringing Device by Defendants' customers and by users infringes the 'D915 Patent. For example, Defendants intend to induce such infringement by, among other things, promoting users to purchase and use the First Infringing Device knowing that its purchase and use infringes one or more claims of the 'D915 Patent.

241.   On information and belief, at least since Plaintiff's August 11, 2021 letter, Defendants have contributed to the infringement of the 'D915 Patent by, *inter alia,* marketing and promoting the First Infringing Device to its customers and users. The First Infringing Device is not a staple article or commodity of commerce suitable for substantial non-infringing use and is known by Defendants to be especially made or especially adapted to the infringe the 'D915 Patent. As a result, Defendants' First Infringing Device has been used by their customers and by users to infringe the 'D915 Patent. Defendants continue to engage in acts of contributory infringement of the 'D915 Patent even after receiving notice of their contributory infringement.

242.   At no time has Therabody granted Defendants authorization, license, or permission to utilize the design claimed in the 'D915 Patent.

243.   Therabody has been damaged by Defendants' acts of infringement of the 'D915 Patent and Therabody will continue to be damaged by such infringement unless enjoined by this Court. Therabody is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. § 284.

244.   Therabody is, and has been, irreparably harmed by Defendants' ongoing infringement including the following harm which cannot be quantified or recouped through monetary damages: (1) lost market share that will be difficult, if not impossible, to recoup later as the First Infringing Device becomes entrenched with retail sellers and trainers who recommend them to their clients, (2) loss of first mover

advantage that Therabody enjoyed as the first company to offer its innovative percussive devices and patented attachments, (3) loss of Therabody's investment in building up the market for percussive devices, (4) negative effect on its reputation as innovator and pioneer, (5) the unquantifiable effect on lost sales of related products, (6) price erosion due to Defendants' First Infringing Device being sold at a price point lower than Therabody's patented product, (7) diversion of resources to defend against loss of market share caused by sales of the First Infringing Device, and (8) Defendants' unauthorized sales that are enticing others to offer for sale and sell infringing attachments that leads to additional irreparable harm described above.

245.   Defendants' acts of infringement, including continuing the infringing activities after receiving notice of Defendants' direct and indirect infringement, have been, and continue to be, willful and deliberate and therefore warrant the award of attorneys' fees pursuant to 35 U.S.C. § 285 and the award of enhanced damages pursuant to 35 U.S.C. § 284.

## SEVENTEENTH CAUSE OF ACTION

### State Unfair Business Practices, Cal. Bus. & Prof. Code § 17200

(Against All Defendants)

246.   Therabody realleges and incorporates by reference all foregoing paragraphs as if fully set forth herein.

247.   Defendants' acts of trademark, trade dress, and patent infringement, false designation of origin, and unfair competition alleged herein constitute unlawful, unfair and fraudulent business practices and misleading advertising pursuant to Cal. Bus. & Prof. Code § 17200.

248.   Therabody has been damaged and will continue to be damaged by Defendants' unlawful, unfair and fraudulent business practices and misleading advertising, as described above.

249.   Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff is entitled to an injunction prohibiting Defendants from continuing the practices described above, and restitution of all amounts acquired by Defendants by means of such wrongful acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Therabody prays for judgment as follows:

A.     For an order that, by the acts complained of herein, Defendants have infringed Therabody's trademark and trade dress rights, in violation of 15 U.S.C. §§ 1114, 1125;

B.     For an order finding that Therabody's Trademarks and the Triangle Trade Dress, the Key Trade Dress, and the PRO Trade Dress are valid and protectable and that, by the acts complained of herein, Defendants have infringed Therabody's rights in the Trademarks and the Therabody Trade Dress;

250.   For an order temporarily, preliminarily and permanently enjoining Defendants, and all of their officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from using from using TRAKK PRO and TRAKK ELITE, the Infringing Trade Dress, and any marks or trade dress confusingly similar to any of Therabody's Trademarks or any of the Therabody Trade Dress, including PRO or ELITE, or engaging in further acts of unfair competition or trademark or trade dress infringement;

C.     For an order finding that the Patents, and each of them, are valid and enforceable;

D.     For an order finding that Defendants have infringed the Patents directly, contributorily, and/or by inducement, literally or by equivalents, in violation of 35 U.S.C. § 271;

E.     For an order temporarily, preliminarily and permanently enjoining Defendants, their officers, directors, agents, servants, affiliates, employees,

subsidiaries, divisions, branches, parents, attorneys, representatives, privies, and all others acting in concert or participation with any of them, from infringing the Patents directly, contributorily and/or by inducement, or otherwise engaging in acts of unfair competition;

F.      For a judgment directing that any products in the possession, custody or control of Defendants which infringe any of the Patents, any of the Therabody Trademarks, and/or any of the Therabody Trade Dress be delivered up and destroyed within 30 days of entry of judgment;

G.      For a judgment directing Defendants to recall all such infringing products and any other materials sold, distributed, advertised or marketed which infringe any of the Patents, any of the Therabody Trademarks, and/or any of the Therabody Trade Dress;

H.      For an order directing Defendants to file with the Court, and serve upon Therabody's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which each of them has complied with the injunction;

I.      For an order that, by the acts complained of herein, Defendants have infringed Therabody's common law trademark and trade dress rights and/or engaged in acts of common law unfair competition against Therabody;

J.      For an order finding that Defendants' conduct alleged herein was willful and intentional and in conscious disregard of Therabody's rights;

K.      For compensatory damages in an amount to be proven at trial, including disgorgement of profits or gains of any kind made by Defendants from their infringing acts, lost profits and/or reasonable royalty, in amounts to be fixed by the Court in accordance with proof, including general, statutory, enhanced, exemplary, treble, and/or punitive damages, as appropriate;

L.      For treble damages pursuant to 15 U.S.C. § 1117;

M.   For an accounting and restitution and disgorgement of all payments, profits, and revenues Defendants obtained as a result of their wrongful conduct, in an amount to be proven at trial, including pursuant to 15 U.S.C. § 1117;

N.   For an order finding that this is an exceptional case, and awarding Plaintiff's reasonable attorney's fees according to proof;

O.   For an order awarding Therabody its costs of court; and

P.   For such other and further relief as the Court may deem just and proper.


DATED: November 19, 2021     GREGORY S. CORDREY
                             ROD S. BERMAN
                             JESSICA BROMALL SPARKMAN
                             JEFFER MANGELS BUTLER & MITCHELL LLP


                             By:   _/s/ Gregory S. Cordrey_
                                     GREGORY S. CORDREY
                                 Attorneys for Plaintiff Therabody, Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

DATED: November 19, 2021    GREGORY S. CORDREY
ROD S. BERMAN
JESSICA BROMALL SPARKMAN
JEFFER MANGELS BUTLER & MITCHELL LLP

By:    /s/ Gregory S. Cordrey
GREGORY S. CORDREY
Attorneys for Plaintiff Therabody, Inc.